UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRISTOUT BOURGUIGNON                  :
                                      :         PRISONER
v.                                    :         Case No. 3:05CV245 (SRU)
                                      :
THERESA C. LANTZ, et al.[1]           :

RULING AND ORDER

Plaintiff Bristout Bourguignon ("Bourguignon") brings this civil rights action pro se, pursuant to 28 U.S.C. § 1915. He alleges federal claims of failure to protect him from harm, conspiracy to introduce weapons possession by inmates, denial of medical care and denial of due process regarding confinement in segregation, and state claims of assault, battery and negligence. Bourguignon seeks unspecified damages and equitable relief. Pending is defendants' motion to dismiss. For the reasons that follow, defendants' motion is granted in substantial part.

I.      Standard of Review

When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003). Dismissal is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999); Sweet

---

[1] The named defendants are Theresa C. Lantz, David Strange, Lt. Alexander, Lt. King, B. Richardson, Captain Crestinie, Captain Dumars, Pat Wollenhaupt and Sheila Hughes.

v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.) (quoting Scheuer, 416 U.S. at 236), cert. denied, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice" to prevent a motion to dismiss from being granted.  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted).

II.     Facts

For the purposes of deciding this motion, the court assumes that the following allegations contained in the complaint and attached documents are true.

In November 2004, Bourguignon was confined at the Osborn Correctional Institution in Somers, Connecticut.  On November 3, 2004, Bourguignon accused another inmate of taking his Walkman.  At approximately 8:27 that evening, Bourguignon left his cell to go to the medication line.  Four inmates, including the inmate Bourguignon had accused earlier in the day, attacked Bourguignon with razors, shanks and locks in socks.  The inmates indicated that they were members of a gang and that the attack was in retaliation for the earlier accusation.  Bourguignon suffered numerous bruises and abrasions, a large lump on his head where he had been hit with a lock in a sock, two "stab wounds" on his left forearm and one razor cut on his left hand near his

thumb.

Following the altercation, Bourguignon was taken to segregation.[2]  Bourguignon did not receive a disciplinary report and was not interviewed by staff regarding the altercation while he was in segregation.  Bourguignon wrote letters to defendant Lantz on November 3, 2004, and to defendant Strange on November 5, 2004, complaining about staff misconduct and negligence.  On November 5, 2004, and December 3, 2004, Bourguignon wrote letters to Governor Rell.  These letters were referred to District Administrator Remi Acosta for response.

A disciplinary hearing regarding Bourguignon's involvement in the altercation was held on November 19, 2004.  Defendant Alexander was the disciplinary hearing officer.  Defendant Richardson was the staff investigator and defendants Dumars and King participated at the hearing.  Defendant Alexander refused to call the witnesses Bourguignon requested because he determined that the staff report provided a full picture of the incident.  Following the hearing, Bourguignon received a written disposition indicating that he had been found guilty based on the staff statement that he was a participant in the altercation.  Although Bourguignon alleges that he received "six months with heavy sanctions," the attached copy of the disciplinary process summary report indicated that Bourguignon received sanctions of fifteen days' confinement in punitive segregation, thirty days' loss of recreation and ninety days' loss of phone privileges.

On November 22, 2004, Bourguignon filed an administrative appeal on the grounds that none of his witnesses were called, there was no evidence supporting the charge of fighting and that the written disposition did not explain the reason why he had been found guilty.  On

---

[2]Bourguignon alleges both that he was taken to administrative segregation and to punitive segregation following the altercation.  (See Compl. at ¶¶ 15 and 33.)

3

December 20, 2004, District Administrator Acosta dismissed the disciplinary report and expunged the charge from Bourguignon's record.

On November 3, 2004, the medical staff denied Bourguignon's request for pain medication and told him that he would have to purchase pain medication on his own. He received no medical attention during the time he was confined in segregation. Bourguignon alleges that the medical staff at Osborn Correctional Institution had a practice of denying medical care to inmates and references a medical grievance he submitted on September 1, 2004, against one of the nurses for denying medical care.

On November 4, 2004, Correctional Officer Fournier took Bourguignon to the treatment room to have his wounds cleaned and to obtain pain medication. The nurse on duty refused to treat him and insulted him in front of Correctional Officer Fournier. The same day, Bourguignon submitted a sick call request to obtain an appointment with the doctor. The following day, Bourguignon was seen by the doctor. Although the doctor prescribed pain medication, Bourguignon did not receive the medication. During this time, Bourguignon experienced pain, headache, body aches, dizziness and blurred vision. Bourguignon filed a medical grievance regarding the denial of treatment. On November 22, 2004, Bourguignon was transferred to MacDougall-Walker Correctional Institution where he received medical treatment.

III.     Discussion

Bourguignon asserts the following claims: (1) defendants Lantz and Strange failed to protect him from risk of attack by other inmates because they failed to train and discipline correctional staff; (2) defendants Lantz and Strange were negligent by conspiring to introduce illegal weapon possession by inmates; (3) defendants Alexander and Richardson denied

4

Bourguignon due process by refusing to call his witnesses and finding him guilty without supporting evidence and without providing him an adequate written disposition of the charge; (4) defendant Dumars and King refused to press charges against the inmates who assaulted Bourguignon; (5) defendants Dumars, King and Crestinie denied Bourguignon his right to press charges against the inmates; (6) defendant Crestinie failed to protect Bourguignon because he did not collect all razors after they were used by inmates; (7) defendant Wollenhaupt failed to provide Bourguignon with medical care and did not ensure that he received the prescribed medication; and (8) defendant Hughes failed to provide him medical care and did not take his grievances seriously.

Defendants move to dismiss on seven grounds: (1) Bourguignon has not fully exhausted his administrative remedies; (2) the negligence claims are barred by Conn. Gen. Stat. § 4-165; (3) defendants were not deliberately indifference to Bourguignon's safety or medical needs; (4) defendants Lantz, Strange and Wollenhaupt were not personally involved in any of the incidents which gave rise to this action; (5) Bourguignon does not have a constitutional right to have someone criminally prosecuted; (6) Bourguignon has not alleged violations of his right to due process because he had no protected liberty interest; and (7) defendants are protected by qualified immunity.

In response, Bourguignon argues that the court should not dismiss his complaint sua sponte without affording him an opportunity to amend. Bourguignon's argument is misplaced. The court is not reviewing this complaint sua sponte; it is reviewing defendants' motion to dismiss. When he received the motion to dismiss, Bourguignon was on notice of the claimed deficiencies in his complaint. Although he could have amended his complaint in response to the

5

motion, he did not do so.³  Nor has he suggested how an amendment would address the deficiencies pointed out in the motion to dismiss.

      A.      <u>Deliberate Indifference to Health and Safety</u>

Bourguignon argues that defendants were deliberately indifferent to his safety because they failed to protect him from harm.  He argues that he was assaulted because defendant Crestinie did not collect all razor blades after the inmates used them and defendants Lantz and Strange permitted this to occur.  Bourguignon also contends that defendants Wollenhaupt and Hughes failed to ensure that he was provided medical care following the incident.

      1. <u>Failure to Protect</u>

The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to "'take reasonable measures to guarantee safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)).  This duty includes protecting inmates from harm at the hands of other inmates.  <u>See id.</u>; <u>Fischl v. Armitage</u>, 128 F.3d 50, 55 (2d Cir. 1997).

To establish a constitutional violation, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," <u>Farmer</u>, 511 U.S. at 834, and that the prison official showed "deliberate indifference" to the prisoner's health or safety.  Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.  <u>See</u> <u>Hayes v. New York City Dep't Of Corrections</u>, 84 F.3d 614, 620 (2d Cir. 1996) (holding that

---

³Bourguignon is not a novice litigant.  Since 2000, he has filed eight cases in this court.

prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm."). For example, correctional staff would be on notice of a substantial risk of serious harms where there has been prior hostility between inmates, or a prior assault by one inmate on another, and those inmates are not kept out of contact from one another. See, e.g., Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) (inmate plaintiff stated claim for failure to protect where he alleged that correctional official knew inmate who harmed plaintiff previously has issued death threats against him); Morales v. DOC, 842 F.2d 27, 30 (2d Cir. 1983) (allegation that defendant knew that inmate who assaulted plaintiff in his sleep previously had attacked him was sufficient to state claim for failure to protect).

 Bourguignon does not allege that he informed correctional staff that any of the other inmates had threatened him. Rather, he alleges that he accused one of the other inmates of taking his Walkman. Bourguignon has alleged no facts suggesting that any defendant was aware that Bourguignon faced a substantial risk of serious harm and disregarded that risk. Bourguignon does allege, however, that defendant Crestinie failed to collect all razors after inmate use. His contention that the inmates possessed at least one razor, supports this allegation. Although Bourguignon does not allege any facts suggesting that defendant Crestinie acted with deliberate indifference to inmate safety, the court cannot conclude that he would be unable to provide evidence of deliberate indifference after discovery. Accordingly, defendants' motion to dismiss is denied with respect to the claim against defendants Crestinie, Lantz and Strange of deliberate indifference to Bourguignon's safety.

      2.      <u>Medical Care</u>

Deliberate indifference by prison officials to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). To prevail on such a claim, Bourguignon must demonstrate "acts or omissions sufficiently harmful to evidence deliberate indifference" to his medical needs. <u>Id.</u> at 106. He must show intent to either deny or unreasonably delay access to needed medical care or the wanton infliction of unnecessary pain by prison personnel. <u>See id.</u> at 104-05.

Because mere negligence will not support a section 1983 claim, "not every lapse in prison medical care will rise to the level of a constitutional violation." <u>Smith</u>, 316 F.3d at 184. The conduct complained of must "shock the conscience" or constitute a "barbarous act." <u>McCloud v. Delaney</u>, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) (citing <u>United States ex rel. Hyde v. McGinnis</u>, 429 F.2d 864 (2d Cir. 1970)).

There are both subjective and objective components to the deliberate indifference standard. <u>See</u> <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994), <u>cert. denied sub nom.</u> <u>Foote v. Hathaway</u>, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991). <u>See also</u> <u>Nance v. Kelly</u>, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) ("'serious medical need' requirement contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain"). The Second Circuit has identified several factors that are highly relevant to the inquiry into the seriousness of a medical condition: "'[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and

substantial pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted). In addition, where the denial of treatment causes plaintiff to suffer a permanent loss or life-long handicap, the medical need is considered serious. See Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir. 2000).

Bourguignon alleges that he suffered three cuts, a large lump on his head and various abrasions and bruises. When he saw the prison doctor, he was prescribed pain medication. The court concludes, for purposes of deciding this motion that Bourguignon's medical needs satisfied the objective component of the standard.

In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, Bourguignon also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Bourguignon does not name the nurse who denied him medical treatment. Instead, he names nurse supervisor Wollenhaupt and medical nurse grievance supervisor Hughes. Bourguignon does not allege that either defendant was aware of his injury, refused him treatment or did not give him the prescribed medication.

The only reference to defendant Wollenhaupt is a statement that, as the nurse supervisor, she is responsible for the conduct of all nurses and all medical care provided at the facility. (See

9

Compl. at ¶ 60.) "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Leonard v. Poe, 282 F.3d 123, 140 (2d Cir. 2002). Section 1983 imposes liability only on the official causing the violation. Thus, the doctrine of respondeat superior is inapplicable in section 1983 cases. See Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Prince v. Edwards, No. 99 Civ. 8650 (DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events through links in the chain of command.") (internal quotations and citation omitted).

> [A] supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

Bourguignon alleges no facts suggesting that defendant Wollenhaupt was aware of his alleged problems obtaining medical care. Because respondeat superior is inapplicable in section 1983 cases, Bourguignon fails to state a claim against defendant Wollenhaupt for deliberate indifference to his medical care. Defendants' motion to dismiss is granted with respect to the claims against defendant Wollenhaupt.

Bourguignon alleges that defendant Hughes is responsible for notifying medical staff of the contents of any medical grievances. (See Compl. at ¶¶ 59, 61.) He attaches to his complaint a medical grievance dated September 1, 2004, two months before the incident giving rise to this case. In the grievance, Bourguignon complained about treatment by Nurse Gail and requested

that she not treat him.  Defendant Hughes apologized for any perceived mistreatment and informed Bourguignon that he would be provided treatment by all medical staff.  In the complaint, Bourguignon alleges that he spent almost a month in segregation and, "since then," he filed a medical grievance.  (See Compl. at ¶¶ 57, 58.)  Elsewhere in the complaint, Bourguignon states that he was released from the restrictive housing unit and transferred to MacDougall-Walker Correctional Institution on November 22, 2005, less than three weeks after the incident.  (See Compl. at ¶ 63.)

Bourguignon's allegations demonstrate that he did not inform defendant Hughes of any problems with medical treatment or receipt of medication until after he had been transferred to MacDougall-Walker Correctional Institution.  Thus, he has alleged no facts suggesting that defendant Hughes was aware of his medical claims or had any involvement in denying him treatment.  Defendants' motion to dismiss is granted with respect to all claims against defendant Hughes on the ground that Bourguignon fails to state a claim upon which relief may be granted.

### B. Criminal Prosecution of Other Inmates

Bourguignon argues that defendants defendant Dumars, King and Crestinie violated his constitutional right when they refused to press criminal charges against the other inmates involved in the altercation.

The Constitution does not provide an individual a cause of action for the failure of the police to investigate a crime.  See, e.g., Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (holding that "in American jurisprudence . . . a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Sattler v. Johnson, 857 F.2d 224, 227 (4th Cir. 1988) (holding that victims of a crime have no constitutional right to have the perpetrator

criminally prosecuted); Langworthy v. Dean, 37 F. Supp. 2d 417, 423 (D. Md. 1999) ("[A] right to compel the prosecuting of criminal activity does not exist."). Thus, any allegations that defendants Dumars, King and Crestinie failed to press charges or would not assist Bourguignon in pressing charges against the inmates involved in the altercation lack legal merit and fail to state a claim cognizable in a section 1983 action. Defendants' motion to dismiss is granted with respect to any claim regarding the failure to prosecute other inmates.

      C.      Due Process

Bourguignon argues that he was denied due process at the November 19, 2004 disciplinary hearing because defendant Alexander failed to call the witnesses Bourguignon requested and decided the matter based on defendant Richards' investigation with no clear evidence supporting the guilty finding.

To state a claim for violation of procedural due process, Bourguignon first must show that he had a protected liberty interest and, if he had such an interest, that he was deprived of that interest without being afforded due process of law. See Tellier v. Fields, 230 F.3d 502, 511 (2d Cir. 2000) (citations omitted). In accordance with the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), the Second Circuit applies a two-part test to determine whether an inmate possesses a protected liberty interest. See id. An inmate has a protected liberty interest "only if the deprivation . . . is atypical and significant and the state has created the liberty interest by statute or regulation." Id. (citations and internal quotation marks omitted).

Bourguignon challenges a disciplinary charge that resulted in sanctions of fifteen days' confinement in segregation, thirty days' loss of recreation and ninety days' loss of telephone privileges. Inmates should reasonably anticipate confinement in segregation. See Russell v.

Scully, 15 F.3d 219, 221 (2d Cir. 1993); see also Frazier v. Coughlin, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that 120-day confinement in segregation followed by 30-day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); Rosario v. Selsky, No. 94 Civ. 6872, 1995 WL 764178, at *3 (S.D.N.Y. Dec 28, 1995) (holding that 120 days' confinement in special housing unit with loss of privileges was not punishment "qualitatively different" from punishment normally suffered by one in prison).

The Second Circuit has not adopted a bright-line test to determine when confinement constitutes an atypical and significant hardship. However, "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under Sandin." Williams v. Keane, No. 95 CIV. 0379 AJP JGK, 1997 WL 527677, at *6 (S.D.N.Y. Aug. 25, 1997) (citing cases). See also Nicholson v. Murphy, No. 3:02cv1815 (MRK), 2003 WL 22909876, at *10-*11 (D. Conn. Sept. 17, 2003) (holding that confinement in segregation for thirty days or less is not an atypical and significant hardship); Fine v. Gallow, No. 3:97cv497 (SRU), 2000 WL 565232, at *9 (D. Conn. Mar. 28, 2000) (granting defendants' motion for summary judgment on ground that two sanctions of five days' confinement in punitive segregation and fifteen days' confined to quarters, and seven days' confinement in punitive segregation, fifteen days' confined to quarters and thirty days' loss of commissary privileges did not constitute an atypical and significant hardship); McNellis v. Meachum, Civ. No. 2:92cv936 (PCD) (D. Conn. Oct. 4, 1995) (holding that thirty-day period of disciplinary segregation does not give rise to liberty interest under Sandin).

Bourguignon has alleged no facts suggesting that the fifteen-day sanction he received was qualitatively different from ordinary prison life.  Thus, the court concludes that Bourguignon's fifteen-day confinement in segregation is not an atypical and significant hardship and does not give rise to a liberty interest under Sandin.  Because Bourguignon has not alleged the deprivation of a protected liberty interest, his due process claim fails.

Further, even if Bourguignon had alleged the deprivation of a protected liberty interest, he concedes that, on appeal, the disciplinary charges were dismissed and expunged from his record.  Thus, he was not denied due process.  See Cespedes v. Coughlin, 956 F. Supp. 454, 473 (S.D.N.Y. 1997) (holding that there is no cause of action for denial of due process where prison disciplinary system errs but corrects the error promptly on appeal).  Defendants' motion to dismiss is granted with respect to the claim for denial of due process.

    D.    Conspiracy

Bourguignon alleges that defendants Lantz and Strange conspired to permit inmates to possess weapons because they failed to properly train and discipline correctional staff.

A claim of conspiracy to violate civil rights requires more than general allegations.  See Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993) (citations omitted); see also Polur v. Raffe, 912 F.2d 52, 56 (2d Cir. 1990) (vague, prolix allegations without pleading any overt acts is insufficient to state a claim of conspiracy); Powell v. Kopman, 511 F. Supp. 700, 704 (S.D.N.Y. 1981) (vague and conclusory statements without specific facts are not enough).  This requirement is not changed by the Supreme Court's decision in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), which proscribes the application of "heightened pleading standard" in civil rights cases.  Cases decided after

Leatherman continue to hold that a claim of conspiracy must contain more than mere conclusory allegations to withstand a motion to dismiss.  Rather than constituting a heightened pleading standard, the requirement merely implements Rule 8(a)(2), Fed. R. Civ. P., which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  See Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague, general or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (same).

Defendants do not specifically address Bourguignon's conspiracy allegations.  The court notes, however, that Bourguignon has included no factual allegations in his complaint regarding defendants Lantz and Strange.  He merely concludes that the fact that at least one razor was not collected means that defendants Lantz and Strange conspired to permit inmates to possess weapons.  That conclusory assumption is insufficient to state a claim for conspiracy.  Thus, Bourguignon's conspiracy allegations are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

E.     State Law Claims

In addition to the federal law claims addressed above, Bourguignon references state law claims of  negligence and assault and battery[4].  Defendants argue that they are immune from suit under state law for any claim based on negligence.

State officials and employees who are sued in their individual capacities possess a limited statutory immunity from suit.  "No state officer or employee shall be personally liable for

---

[4] Although Bourguignon mentions assault and battery, he does not attempt to state a claim for assault and battery against any of the defendants.  The only assault or battery referenced in the complaint is that committed by other inmates, who are not named as defendants.

damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." Conn. Gen. Stat. § 4-165. Accordingly, to the extent that Bourguignon is attempting to assert a claim that defendants Crestinie, Lantz and Strange were negligent in failing to ensure that all razors were collected after use, those defendants are immune from suit. Defendants' motion to dismiss is granted with respect to any negligence claims.

IV.     Conclusion

Defendants' motion to dismiss [**doc. #12**] is **GRANTED** with respect to all claims except the claim against defendants Crestinie, Lantz and Strange for deliberate indifference to Bourguignon's safety. Bourguignon's allegations of conspiracy are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**SO ORDERED** this 25th day of January 2006, at Bridgeport, Connecticut.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge